No. 88-421

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

JOSEPH VARELA,

Claimant and Respondent,

-vs-

EXXON, U.S.A., BILLINGS REFINERY,
Employer,
and
PETROLEUM CASUALTY COMPANY,

Defendant and Appellant.

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Crowley Law Firm; Terry Spear, Billings, Montana

For Respondent:

Whalen & Whalen; Michael J. Whalen, Billings, Montana

Submitted on Briefs: Jan. 12, 1989

Decided:

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Both Joseph Varela (claimant) and Petroleum Casualty Company (insurer) appeal a decision of the Workers' Compensation Court allowing in part and denying in part a compensation claim filed by Mr. Varela against his employer, Exxon, U.S.A. The claimant appeals that portion of the decision denying his claim based on the running of the statute of limitations, along with several other issues. The insurer appeals that portion of the decision allowing compensation for a second injury following the claimant's return to work. We affirm in part and reverse in part, holding that the claimant has suffered a compensable injury and remanding for a determination of benefits.

The issues are:

1. Did the court err in holding that the claim for compensation arising from the below-the-knee amputation is barred by the statute of limitations?

2. Did the court err in holding that the claimant suffered one or more compensable injuries following the below-the-knee amputation which resulted in his inability to return to his previous employment?

3. Did the court err in refusing to consider the claimant's deposition as part of the record?

4. Did the court err in holding that there was no evidence by which it could establish the claimant's disability and compensation rate for the second injury?

5. Did the court err in holding that the claimant was not entitled to a 20% penalty increase in award for unreasonable withholding of benefits?

In August of 1979, Mr. Varela was involved in a vehicle accident between the motorcycle he was operating and a pickup

truck. This accident was not in any way related to his employment. As a result, Mr. Varela suffered severe injuries to his right foot which was amputated in November of 1979. The surgical procedure, known as a Syme's amputation, involved the removal of the foot at the ankle while preserving the pad on the heel to serve as the base of a stump. At the time of the accident, Mr. Varela was an employee of Exxon, U.S.A., at the Billings refinery. Following the foot amputation he was fitted with a prosthesis, or artificial limb, and returned to work for Exxon in April of 1980.

Mr. Varela's job required him to climb steel stairs on various structures including towers, tanks, pipelines, and boilers to install insulation. He was also required to lift 50 to 100 pound sacks of insulation material, and to walk and stand for prolonged periods on concrete and uneven surfaces. These duties continued until 1983 when he was assigned to operating a vacuum truck which required him to drag and pull heavy hoses to and from the truck. Following his return to work in 1980 and continuing until 1985, Mr. Varela experienced increasing discomfort and pain with his prosthesis. He had difficulty in climbing, walking and standing for prolonged periods, and the sores which developed on his stump would not heal.

In November, 1985, the claimant went to see Dr. Dorr, an orthopedic surgeon. Dr. Dorr indicated that Mr. Varela should have a different type of prosthesis or should undergo a below-the-knee amputation (B/K amputation). Mr. Varela sought a second opinion from Dr. Kobold, also an orthopedic surgeon, who recommended the B/K amputation to alleviate the problems Mr. Varela was having with his stump. Dr. Kobold diagnosed sympathetic dystrophy and medial and lateral bone spurs. He described sympathetic dystrophy as a reaction of the sympathetic nervous system to either the accident or the

3

Syme's amputation or both, which causes pain, burning, or clamminess in the area. To relieve these discomforts, Dr. Kobold performed the B/K amputation on December 3, 1985. Mr. Varela later received a B/K prosthesis and returned to work for Exxon in May of 1986. He continued in his employment until he was released in November of 1986.

During the period of May to November of 1986, the claimant had problems with balance and stability, and continued to experience pain and discomfort with his prosthesis while he was working. He testified that he fell several times while on the job in November 1986. He went to see Dr. Kobold in December because he had fallen twice and broke his prosthesis. The doctor wrote a letter to "whom it may concern" at Exxon, directing that the claimant's work activities should be restricted because of "pressure points and pain in his stump (due to) the amount of the following activities that he has been doing." These restricted activities included prolonged standing or walking, squatting, and heavy lifting or carrying.

Upon receiving the letter, Exxon discharged Mr. Varela from employment because he was no longer able to perform those activities necessary to his employment. Exxon had no other positions available at that time which might have been more suitable to Mr. Varela's abilities. Following the medical termination, the record shows that the claimant was entitled to and received six months of disability payments equivalent to his wages pursuant to his negotiated contract of employment. After six months, those payments were reduced by half and were to continue indefinitely. In April of 1987, Mr. Varela filed his claim for compensation.

I

Did the court err in holding that the claim for compensation is barred by the statute of limitations?

4

The relevant statute of limitations for a compensation claim is found at § 39-71-601, MCA:

(1) In case of personal injury or death, all claims shall be forever barred unless presented in writing to the employer, the insurer, or the division, as the case may be, within 12 months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him in his behalf.
(2) The division may, upon a reasonable showing by the claimant of lack of knowledge of the disability, waive the time requirement up to an additional 24 months.

The Workers' Compensation Court determined that the B/K amputation was necessitated by the work-related aggravation of the claimant's Syme's stump, and was therefore compensable. The court found, however, that the B/K amputation took place on December 3, 1985, and that the claim was not filed until April 2, 1987. Based on this 16 month delay, the court concluded that the claimant had not met the statutory limitation period and the claim was barred. The court also determined that it did not have jurisdiction under § 39-71-601(2), MCA, to extend the filing date by 24 months. The claimant does not find error with the latter determination so it will not be addressed on appeal.

Mr. Varela argues that even though he did not comply with the 12 month requirement of the statute, the limitation period should be tolled to allow his claim. This Court has tolled the statute of limitations for a compensation claim where a claimant can show that: (1) disability benefits have been received from the employer which are "sufficient to convince the recipient that he is receiving such a large percentage of workers' compensation benefits available to him that to seek further benefits would be a wasted effort;" and (2) the employer has knowledge that the claimant's inability

5

to work was due to an industrial injury. Frost v. Anaconda (1982), 198 Mont. 216, 221-22, 645 P.2d 419, 422-23.

The Workers' Compensation Court found that the claimant presented no evidence to fulfill either of the requirements from Frost so as to toll the statute of limitations. We will not overturn that finding if there is substantial evidence in the record upon which to support it. Giacoletto v. Silver Bow Pizza Parlor (Mont. 1988), 751 P.2d 1059, 45 St.Rep. 536. The record shows that Mr. Varela did receive full disability benefits from his employer after his medical termination in December of 1986, but that proof is not relevant to the present inquiry. Mr. Varela failed to submit substantial evidence that he received disability benefits which were sufficient to convince him that he was receiving an equivalent to workers' compensation during the period of December 1985 to December 1986. We therefore conclude that the lower court correctly determined that claimant had not met the first element of the test from Frost.

The Workers' Compensation Court also concluded that the employer had no knowledge that the disability payments were related to an industrial accident, and as a result that Mr. Varela had failed to meet part two of the Frost test. While the evidence indicates that Exxon knew Mr. Varela's physical condition was causing him problems at work, we agree with the lower court that there is a difference between that kind of knowledge and the kind of knowledge contemplated by this Court in Frost. Under Frost, the employer must have had knowledge that Mr. Varela's physical pain and discomfort was compensably related to his job. We have reviewed the record and conclude that there is no indication that Exxon had knowledge that the claimant's original injury was aggravated by work-related activities so as to become compensable. We hold that the claimant has not presented evidence sufficient

6

to fulfill either of the requirements from <u>Frost</u>.  The lower court's conclusion that the claim is barred by the statute of limitations is affirmed.

## II

Did the court err in holding that the claimant suffered one or more compensable injuries following the below-the-knee amputation which resulted in his inability to return to his previous employment?

The lower court determined that Mr. Varela sustained a "compensable event" following his return to work after the B/K amputation which was not barred by the statute of limitations.  To be compensable, the claimant is required to prove that he suffered an injury while in the scope of employment, "injury" being defined as:

> (1) a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom . . .

Section 39-71-119, MCA (1985).

The court did not identify one specific incident of accident or injury, but considered a number of events following Mr. Varela's return to work which culminated in a "tangible happening and resultant physical harm."  The events which the court referred to included the claimant's on-the-job activities which irritated his stump, the instability he experienced which caused him to fall on several occasions, and two falls in November of 1986 which broke his prosthesis and caused severe pain.  The court concluded that it was Mr. Varela's second injury which led to his medical termination by the employer.

The insurer argues that it was error for the Workers' Compensation Court to tie Mr. Varela's inability to continue

his employment to his "injuries" in 1986, referring to the two falls in November. The insurer contends that it was the B/K amputation which caused his inability to work rather than anything which was connected to or occurred at work.

Presumably, the claimant could have performed his job without difficulty if it weren't for the prosthesis. Similarly, if it weren't for the strenuous activities required by that job, Mr. Varela may not have experienced pain or a broken prosthesis. It is not our duty to weigh the evidence in this regard. The Workers' Compensation Court traced the claimant's inability to work to the events which followed the B/K amputation and his return to work. That determination will be upheld if supported by substantial credible evidence.

Both the claimant and Dr. Kobold testified as to the pain and discomfort caused by the work-related activities. The claimant testified that the pain he experienced with his B/K prosthesis also affected his back, and his other knee and ankle. In addition, the claimant felt unstable when trying to perform his duties such as climbing on and off the vacuum truck. He fell on two occasions and broke his prosthesis because of the instability. Dr. Kobold wrote a prescription for a new prosthesis and restricted the claimant's activities at work. Subsequently, the claimant was discharged from employment. We hold that this evidence is sufficient to support the lower court's conclusions that Mr. Varela suffered a compensable injury following his return to work in May of 1986.

III

Did the court err in refusing to consider the claimant's deposition as part of the record?

Mr. Varela argues that the court should have considered his deposition as part of the evidentiary record. Upon defendant's objection, the court refused to consider the

deposition as part of the record "due to the claimant's failure to abide by the Montana Rules of Evidence." While the court acknowledged that the deposition had been filed, it noted that no deposition testimony was offered by the claimant at trial, nor was it incorporated into the record except in the claimant's reply brief, and the claimant did not request its inclusion until after the trial.

The relevant portion of the deposition contains testimony by Mr. Varela about statements made to him by his supervisor while he was hospitalized after the B/K amputation. Those statements are alleged assurances by the employer that Mr. Varela would have nothing to worry about as far as his job or any litigation was concerned, so that he was lulled into a sense of false security and therefore did not file a timely claim for compensation. In anticipation of this testimony at trial, the insurer was prepared to call the supervisor to rebut Mr. Varela's testimony regarding the out-of-court statements. However, no mention of the statements was made by the claimant at trial. Instead, the claimant waited until after trial to bring forth evidence of the alleged assurances.

The statements contained in Mr. Varela's deposition fall into the definition of hearsay:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Rule 801(c), M.R.Evid. Generally, hearsay is inadmissible unless it falls into one of the exceptions in Rule 803 or 804, M.R.Evid. Mr. Varela's deposition testimony could have been admissible as former testimony under Rule 804(b)(1), but he would have had to show his unavailability as a witness.

9

Since Mr. Varela testified at trial, that portion of the deposition testimony would have been inadmissible.

Had Mr. Varela testified at trial as to the alleged assurances, the defendant would have had the opportunity to rebut that testimony. To allow the testimony by deposition would effectively deny the insurer any opportunity to challenge those statements made by Mr. Varela in his deposition. We note that broad discretion is given to the lower court in admitting or refusing to admit evidence. Britton v. Farmers Insurance Group (Mont. 1986), 721 P.2d 303, 315, 43 St.Rep. 641, 654. Given this discretion, we conclude that it was not reversible error for the Workers' Compensation Court to exclude the claimant's deposition from the evidentiary record.

## IV

Did the court err in holding that there was no evidence by which it could establish the claimant's disability and compensation rate for the second injury?

Having concluded that the claimant suffered a job-related injury after returning to work following the amputation, it was for the Workers' Compensation Court to determine what disability and benefits Mr. Varela was entitled to. However, the court concluded that it was unable to do so because there was little evidence in the record to show what disability entitlement the claimant should receive. Based on the medical evidence, the court found that Mr. Varela could no longer work at the refinery, but noted that finding alone would not warrant payment of compensation. The court concluded that it would be necessary for the claimant to establish what labor market, if any, would be available given his injury, age, occupational skills, education and experience.

10

The record established that Mr. Varela's formal education was limited to high school. During his youth he worked as a farm laborer, doing beet labor and ditch digging. Mr. Varela testified that he is no longer able to perform any of those duties by reason of his amputation. Following graduation from high school, he worked for Exxon for one year before entering the military. Mr. Varela testified that he was trained as a small arms combat infantryman and learned nothing in his training which he could transfer to civilian work. After three years of military service, he returned to work for Exxon for eleven years until his medical termination in 1986. Mr. Varela testified that he has had no formal training or education to upgrade his employment skills, nor has he engaged in any other type of employment.

The Workers' Compensation Court was impressed with the "tenacity, intelligence, and the obvious strong work ethic of the claimant." The court marvelled at how, for some six years, claimant could even perform many of his job duties with his handicap.

The record established that Mr. Varela's employment experience was limited to Exxon and farm labor, and the uncontradicted evidence established that he is unable to perform those types of work. We conclude that by the establishing of those facts, the claimant met his initial burden of showing that because of his work related injury, he no longer is able to perform the duties associated with those jobs which constitute his normal labor market. Coles v. Seven Eleven Stores and American Motorists Insurance Co. (Mont. 1985), 704 P.2d 1048, 1051, 42 St.Rep. 1238, 1241.

When claimant established that he is unable to perform those jobs within his normal labor market, the burden shifted to the employer to show that Mr. Varela has reasonable prospects of employment so that he is not entitled to total

11

disability benefits. <u>Coles</u>, 704 P.2d at 1051. We are reluctant to reverse the Workers' Compensation Court on a factual determination. However, the facts in this record as summarized above establish without significant contradiction that Mr. Varela has no reasonable prospects of employment. We conclude that the burden then shifted to the employer to demonstrate otherwise, and further conclude that an additional hearing is required for the submission of proof on this issue. This case is remanded for such further proceedings as are required by the Workers Compensation Court in order to make a determination of entitlement which is consistent with this opinion.

V

Did the court err in holding that the claimant was not entitled to a 20% penalty increase in award for unreasonable withholding of benefits?

The claimant argues that the Workers' Compensation Court should have awarded the 20% penalty allowed by §39-71-2907, MCA (1985), because he contends that the employer was aware that Mr. Varela's injury was work-related as early as 1985. The record discloses that the employer was aware of Mr. Varela's discomfort and his difficulty in performing his work-related duties. That awareness, however, is not analogous to a knowledge that the injury was compensably related to work. We hold that the claimant is not entitled to the 20% increased penalty.

We affirm the decision of the Workers' Compensation Court with respect to the running of the statute of limitations on the first claim, the compensability of the second claim, the exclusion of the claimant's deposition from the record, and the disallowance of the 20% penalty. With respect to the issue of disability benefits on Mr. Varela's

12

compensable second injury, we remand for a determination of benefits which is consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice W.E. Hunt did not participate in this decision.

13