No. 01-554

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 172

JULIO MADRID,

        Plaintiff and Appellant,

   v.

ZENCHIKU LAND AND LIVESTOCK,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Fifth Judicial District,
                      In and for the County of Beaverhead,
                      The Honorable Loren Tucker, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        William P. Joyce, Robert J. Whelan, Joyce & Starin, Butte, Montana

        For Respondent:

        Randall G. Nelson, Nelson Law Firm, Billings, Montana

Submitted on Briefs: January 17, 2002

Decided:  July 31, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Appellant Julio Madrid (Madrid) appeals an order of the Fifth Judicial District Court, Beaverhead County, granting summary judgment to Respondent Zenchiku Land and Livestock (Zenchiku). We reverse and remand for a determination of damages.

¶2 We address the following issue on appeal: Did the District Court err in holding that § 81-4-215, MCA, does not impose strict liability on owners of trespassing livestock?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 1996, the Huntley Ranch (Huntley) employed Madrid as a ranch hand. On or about May 26, 1996, a bull owned by Zenchiku, an adjoining ranch, was discovered on Huntley property. A Zenchiku employee named Gary James (James) came to retrieve the bull. After failed attempts to herd the bull through a gate, James, Madrid, James' wife and one other Huntley employee attempted to put the bull in a trailer. Although the bull got in the trailer, when James went to close the doors, the bull came out of the trailer and charged at Madrid, who was sitting on a horse about 30 feet behind the trailer. When the bull hit the horse, Madrid was knocked off and the bull went after him on the ground. Madrid suffered various injuries from this encounter which gave rise to this cause of action for strict liability in trespass against Zenchiku as owner of the bull.

¶4 Before trial, both parties moved for summary judgment regarding whether Zenchiku was strictly liable under § 81-4-215, MCA. District Court Judge Robert J. Boyd granted summary judgment to Zenchiku and dismissed the strict liability in trespass count of Madrid's complaint, holding that the statute did not provide for strict liability. Subsequently, this Court issued *Larson-Murphy v. Steiner*, 2000 MT 334, 303 Mont. 96, 15 P.3d 1205, which extensively discussed the history of open range law and the liability for damages caused by livestock. As a result of this

opinion, Madrid moved for reconsideration of the previous order granting summary judgment to Zenchiku. Because Judge Boyd passed away, Judge Loren Tucker assumed oversight of the case. Judge Tucker agreed with Judge Boyd and denied Madrid's motion for reconsideration. Madrid now appeals from both orders.

## II. STANDARD OF REVIEW

¶5      We review a trial court's ruling on summary judgment *de novo*. *Larson-Murphy*, ¶ 20. In this case, summary judgment was granted based on the interpretation of a statute. Interpretation and construction of a statute is a matter of law. *Clover Leaf Dairy v. State* (1997), 285 Mont. 380, 389, 948 P.2d 1164, 1169; § 26-1-201, MCA. We review a trial court's conclusions of law to determine whether its interpretation is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## III. DISCUSSION

**¶6      Did the District Court err in holding that § 81-4-215, MCA, does not impose strict liability on owners of trespassing livestock?**

¶7      Although § 81-4-215, MCA, was originally enacted in 1887, we have not had occasion to directly apply the standard of liability of a claim brought under this statute. Rather, this statute has only been discussed in its relation to other statutes; in contrast to claims not brought under it; or in relation to the exception to the statute for intentional conduct. *See e.g. Larson-Murphy*, ¶¶ 41-69; *State v. Blakely* (1979), 181 Mont. 118, 122, 592 P.2d 501, 503; *Monroe v. Cannon* (1900), 24 Mont. 316, 326, 61 P. 863, 866.

¶8      Section 81-4-215, MCA, entitled "Liability of owners of stock for trespass" reads:

> If any cattle, horses, mules, asses, hogs, sheep, llamas, alpacas, bison, or other domestic animals break into any enclosure and the fence of the enclosure is legal, as provided in 81-4-101, the owner of the animals is liable for all damages to the owner

3

or occupant of the enclosure. This section may not be construed to require a legal fence in order to maintain an action for injury done by animals running at large contrary to law.

In both of its orders, the District Court held that this section does not allow for strict liability. Rather, in the first order, the court held that the language "is liable for all damages" was "only a reference to the measure of damages to be considered by the Court and adds no greater degree of liability on the owner of a trespassing animal." The second order held that "[t]he open range concept is directly contrasted with strict liability," and that our intervening decision in *Larson-Murphy* did not require a change in the District Court's first order because *Larson-Murphy* did not address the relationship between adjoining landowners. Finally, while neither order expressly stated that the statute provides for a negligence standard, the language of both orders implies that a negligence standard applies because both orders state that strict liability does not apply.

¶9 Madrid asserts that the District Court erred in holding that § 81-4-215, MCA, does not provide for strict liability. He bases his argument on the plain language "is liable for all damages" contained in the statute. He also argues that the history and policy of the open range doctrine illustrate that the Legislature intended to enact a strict liability standard.

¶10 Zenchiku asserts the District Court correctly granted summary judgment because the statute provides for a negligence standard and further asserts that a strict liability interpretation would be a new development in Montana law. It also argues that strict liability is inappropriate because the definition of a legal fence is one which would not provide an absolute barrier against bulls or cows entering enclosed property and because cattle routinely jump fences. Zenchiku also argues that strict liability is inappropriate in the face of an owner's reasonable attempts to keep cattle fenced in open

range country. Zenchiku further asserts that the cooperative relations between these adjoining owners, mutual efforts by both ranches to keep bulls from going onto the other's property, and a fence for which costs and maintenance are a shared responsibility should all provide for a shared negligence standard. Zenchiku also argues that trespass does not necessarily imply strict liability, but can incorporate the concept of fault. Finally, in addition to its negligence argument, Zenchiku also argues that the fence at issue here does not fit the requirements of the statute and that consequently, Madrid does not meet the elements required by the statute to receive damages.

¶11     As mentioned above, we have not had occasion to directly address the standard of liability provided for in § 81-4-215, MCA, as most of our previous cases involving livestock trespass concern intentional trespass onto unenclosed land. However, we recently reviewed the history of open range law in *Larson-Murphy*. While that case did not consider the situation of adjoining landowners presented here, *Larson-Murphy* did explain how § 81-4-215, MCA, relates to the general framework of the open range doctrine. To briefly restate the relevant discussion in *Larson-Murphy*, under English common law an owner of livestock has the burden to ***fence in*** livestock because that owner is strictly liable for any damages caused by their livestock. In contrast, under the open range doctrine, owners of livestock do not have to fence in their livestock because they are not generally liable for damage caused by those livestock. Rather, if another landowner wants to recover for damages caused by trespassing livestock, that landowner has the burden to ***fence out*** trespassing livestock. *Larson-Murphy*, ¶¶ 34-44, 69, 84, 86.

¶12     *Larson-Murphy* noted that this change occurred because of the vast land area required to graze livestock in the arid western United States. As a result, the open range doctrine changed the English common law by shifting the burden of building fences from livestock owners to those who

5

would want to keep livestock out, namely farmers. *Larson-Murphy*, ¶¶ 38-39. We noted in *Larson-Murphy* that the intent of § 81-4-215, MCA, was to codify this change. *Larson-Murphy*, ¶¶ 40, 69, 84. *See also Blakely*, 181 Mont. at 122, 592 P.2d at 503 (§ 81-4-215, MCA, provides a civil remedy for trespassing cattle); *Montgomery v. Gehring* (1965), 145 Mont. 278, 283, 400 P.2d 403, 406 ("One releasing his livestock onto lands where he has a right to do so is under no duty to restrain them from entering another's unenclosed land."); *Hughey v. Fergus County* (1934), 98 Mont. 98, 101-02, 37 P.2d 1035, 1036; *Fant v. Lyman* (1889), 9 Mont. 61, 62, 22 P. 120, 121; *Smith v. Williams* (1874), 2 Mont. 195; Ryan M. Archer, *Searching for the Montana Open Range: A Judicial and Legislative Struggle to Balance Tradition and Modernization in an Evolving West*, 63 Mont. L. Rev. 197, 203-04 (2002) (the "essence of this statute remains preserved in the current Montana Code Annotated."). Therefore, we agree with Madrid that the intent of § 81-4-215, MCA, is to follow the open range doctrine by providing a strict liability remedy for trespassing livestock to landowners who enclose their property with a legal fence.

¶13     Zenchiku argues that since the open range doctrine changed English common law, what changed was the standard of strict liability. We disagree. Rather, the discussion in *Larson-Murphy* makes clear that the standard of strict liability remained and the only thing that changed was who had the burden to fence in order to gain protection under the law.

¶14     In addition to the history and policy behind § 81-4-215, MCA, the plain language of the statute indicates a strict liability standard because it states the owner of the livestock "is" liable. In contrast, in *Ambrogini v. Todd*, we held that language such as "may," "permit," or "allow" provides for a negligence standard. *Ambrogini v. Todd* (1982), 197 Mont. 111, 119-20, 642 P.2d 1013, 1018, *overruled on other grounds by Larson-Murphy*, ¶ 79. No such language is present in this statute.

6

Further, to interpret "is liable" as a negligence standard would defeat the purpose of the statute. As Madrid points out, if the standard under the statute were negligence, a potential plaintiff does not gain anything by building a fence because that plaintiff could bring a negligence action with or without a fence.

¶15　Having determined that the statute provides for a strict liability standard, we next address Zenchiku's argument that Madrid did not meet the elements required in order to recover under the statute. Zenchiku asserts that the fence at issue here does not meet the statutory requirements because there was no evidence that Huntley constructed or maintained the entire fence which enclosed the area of the Huntley ranch where the incident occurred and which separates the Huntley and Zenchiku ranches. Further, Zenchiku asserts that maintenance of the fence is shared by Huntley and Zenchiku. Zenchiku makes this argument despite its statement in its brief on appeal that the "sole and narrow issue on appeal is whether Mont. Code Ann. § 81-4-215 imposes a standard of strict liability."

¶16　In its orders regarding interpretation of the statute, the District Court did not consider any of these issues regarding the fence. Rather, the court stated that "[t]he parties agree that the land was enclosed by a legal fence." Therefore, the court did not consider any of the issues regarding the fence which Zenchiku now raises.

¶17　The statute itself does not state any requirements regarding who builds or maintains the "legal" fence. *See also* § 81-4-101, MCA. Rather, the language of the statute makes clear that liability is imposed if the fence is legal, the animal trespassing or breaking into the enclosure is not supposed to be there, and an owner or occupant entitled to be in the enclosure incurs damages. Therefore, under the terms of the statute, it is irrelevant who builds or maintains the "legal fence."

7

Rather, relative liability is determined depending on whether an animal broke into an enclosure and whether someone is an owner or occupant.

¶18     In this case, there is no dispute that Zenchiku's bull broke into an enclosure and no dispute that Madrid was a proper occupant of the enclosure. Further, Zenchiku does not dispute that the fence here meets the definition of a legal fence in § 81-4-101, MCA. Therefore, Madrid met all the requirements needed to recover under § 81-4-215, MCA, and is entitled to damages because Zenchiku is strictly liable for the actions of its trespassing bull.

¶19     Finally, in making this holding, we recognize that a statute written over a century ago may no longer fit the cooperative practices for building fences or managing stray livestock referred to by Zenchiku. Further, when the open range doctrine was established and codified by § 81-4-215, MCA, much of the land was unfenced. Therefore the statute did not contemplate the current situation in which large ranches are entirely enclosed. However, we must interpret the statute as written and must give effect to the statute's original intent. Any other action is properly left to the Legislature.

## IV. CONCLUSION

¶20     Because the District Court erred in holding that § 81-4-215, MCA, does not provide for strict liability, and because Madrid met all the requirements of the statute, we reverse and remand for a determination of damages.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER

8

Chief Justice Karla M. Gray specially concurring.

¶21 I specially concur in the Court's opinion. I strenuously dissented from the Court's decision in *Larson-Murphy* and still believe it was incorrect. The Court having stated the law in that case, however, I am as bound by it as are all other Montanans. The Court properly incorporates *Larson-Murphy* into its discussion and analysis in the present case.

¶22 Moreover, I agree entirely with the Court's interpretation of the plain language of § 81-4-215, MCA. To vary it in response to Zenchiku's arguments would be to overstep both our constitutional obligation to refrain from exercising power properly belonging to the Legislature and our statutory obligations with regard to the interpretation of statutes. *See* Art. III, Sec. 1, Mont. Const.; §§ 1-2-101 through 1-2-208, MCA.

¶23 Addressing several of Zenchiku's specific arguments, I offer the following observations. Regarding the assertion that a strict liability interpretation would be a new development in Montana law, I need state only that the Court and I totally agree. The reason, as the Court points out, is that the statute at issue here has not been interpreted by this Court during its 115-year history. Such interpretations, when a new matter is raised, often result in "a new development in Montana law." Next, Zenchiku's several arguments that strict liability is "inappropriate" should be addressed to the Legislature which created § 81-4-215, MCA, not to this Court. The same is true of Zenchiku's assertion that cooperative relations, mutual efforts and shared responsibility for costs and maintenance for the fence "should provide for a shared negligence standard." Such changes in § 81-4-215, MCA, properly can be made only by the Legislature.

¶24 In sum, I join in the Court's opinion and result, notwithstanding my previous dissent in

*Larson-Murphy.*

/S/ KARLA M. GRAY