DA 06-0365

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 185

LEE N. THOMPSON, DARIN SHARP and SCOTT BAILEY,

> Petitioners and Respondents,

v.

STATE OF MONTANA,

> Respondent and Appellant,

and

LIBERTY NORTHWEST INSURANCE CORPORATION
and MONTANA STATE FUND,

> Intervenors and Appellants.

APPEAL FROM: Montana Workers' Compensation Court, WCC 2004-1089
Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Hon. Mike McGrath, Montana Attorney General, Anthony Johnstone
(argued), Assistant Attorney General, Helena, Montana

For Intervenors-Appellants:

Kevin Braun (argued), Special Assistant Attorney General,
Montana State Fund, Helena, Montana

Larry W. Jones (argued), Law Offices of Larry W. Jones,
Missoula, Montana

For Respondents:

Norman L. Newhall (argued), Linnell, Newhall, Martin & Schulke, P.C.,
Great Falls, MT

Argued: November 15, 2006
Submitted: December 5, 2006
Decided: August 17, 2007

Filed:

Clerk

2

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Lee Thompson, Darin Sharp, and Scott Bailey (collectively, "the Workers") each filed claims in the Workers' Compensation Court ("WCC") for workers' compensation benefits.  In a separate action, the Workers jointly filed a Petition for Declaratory Judgment in the WCC, naming the State of Montana ("State") as the sole respondent. They sought a declaration stating that the claimant disclosure procedures, specifically the claimant disclosure waiver provisions set forth in §§ 39-71-604(3) and 50-16-527(5), MCA (2003)[1] violated their state constitutional right to privacy and deprived them of property without due process of law.  The WCC allowed Liberty Northwest Insurance Corporation ("Liberty") and Montana State Fund ("MSF"; collectively, "Intervenors") to intervene in the action.  The WCC then granted summary judgment in favor of the Workers and held that §§ 39-71-604(3) and 50-16-527(5), MCA, were unconstitutional. The WCC also awarded attorney's fees and costs against the State.  Subsequently, the WCC denied Liberty's Motion for Reconsideration.    The State and Intervenors (collectively, "Appellants") appeal.  We reverse.

¶2      Appellants raise multiple and overlapping issues on appeal, which we restate as follows:

---

[1] We note that in 2003, the Legislature amended §§ 39-71-604(3) and 50-16-527(5), MCA.  The 2003 amendments made two significant changes to both §§ 39-71-604(3) and 50-16-527(5), MCA.  First, the Legislature provided explicitly for the disclosure and communication of health care information.  Second, the Legislature provided for such disclosure without prior notice to the injured employee.  Neither §§ 39-71-604(3) nor 50-16-527(5), MCA, have been amended since.

1. Did the WCC err by concluding that it had jurisdiction to enter a declaratory judgment in the particular context of this case?

2. Did the WCC err when it awarded attorney's fees and costs against the State?

3. Did the WCC err by ruling that the claimant disclosure procedures of §§ 39-71-604(3) and 50-16-527(5), MCA, violate a workers' compensation claimant's constitutional right to privacy under Article II, Section 10 of the Montana Constitution?

4. Did the WCC err by ruling that the claimant disclosure procedures of §§ 39-71-604(3) and 50-16-527(5), MCA, deprive a workers' compensation claimant of property without due process of law under Article II, Section 17 of the Montana Constitution?

¶3 Because the first two issues are dispositive of this appeal, we do not address Issue 3 or Issue 4. On appeal, MSF confines its arguments solely to Issues 3 and 4. Thus, we will not address MSF's arguments. Instead, we will address the arguments presented by the State and Liberty pertaining to Issues 1 and 2.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On June 30, 2004, the Workers filed a Petition for Declaratory Judgment ("Petition") in the WCC. The State was the only respondent named in the Petition. The Workers sought a declaratory judgment stating that §§ 39-71-604(3) and 50-16-527(5), MCA, are unconstitutional under Article II, Section 10 of the Montana Constitution. Article II, Section 10 of the Montana Constitution provides that "[t]he right of individual

4

privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest."

¶5 Section 39-71-604(3), MCA, a provision of the Workers' Compensation Act, states that "[a] signed claim for workers' compensation or occupational disease benefits or a signed release authorizes a workers' compensation insurer . . . to communicate with a physician or other health care provider about relevant health care information" and to receive such relevant information "without prior notice to the injured employee." The Uniform Health Care Information Act, codified as §§ 50-16-501 to -553, MCA, provides that a patient may authorize a health care provider to disclose the patient's health care information if the authorization identifies the nature of the information to be disclosed and identifies the person to whom the information is to be disclosed. Section 50-16-526, MCA. Section 50-16-527, MCA, in turn, explicitly provides an exception to the general rules set forth in § 50-16-526, MCA. Under § 50-16-527(5), MCA, a signed claim for workers' compensation benefits or a signed release authorizes a workers' compensation insurer to communicate with a physician or other health care provider about relevant health care information and receive such information without prior notice to the injured employee. The language of § 50-16-527(5), MCA, is, for all intents and purposes, identical to the language of § 39-71-604(3), MCA.

¶6 Essentially, the Workers argued that the claimant disclosure procedures set forth in §§ 39-71-604(3) and 50-16-527(5), MCA, violated their state constitutional right to privacy because there was no compelling state interest which supported the right of private insurers to engage in private communications with health care providers for an

5

injured employee without prior notice to the employee. The Workers also asked the WCC to award reasonable attorney's fees and costs against the State.

¶7 On July 21, 2004, pursuant to Admin. R. M. 24.5.309 and M. R. Civ. P. 24(a), Liberty moved to intervene in this action. According to Liberty, it is the "largest private workers' compensation carrier in the State of Montana." The WCC granted Liberty's motion to intervene on July 26, 2004. MSF subsequently filed a motion to intervene, also pursuant to Admin. R. M. 24.5.309 and M. R. Civ. P. 24(a), on August 23, 2004. MSF argued that a ruling on the constitutionality of § 39-71-604, MCA, would affect all workers' compensation insurance carriers in Montana, including MSF. On August 26, 2004, the WCC granted MSF's motion to intervene.

¶8 The Workers moved for summary judgment on October 15, 2004, asserting that no genuine issues of material fact existed and that §§ 39-71-604(3) and 50-16-527(5), MCA, were unconstitutional as a matter of law under Article II, Section 10 of the Montana Constitution.

¶9 On January 25, 2005, before the WCC ruled on the motion for summary judgment, the Workers filed a motion to amend their Petition. In addition to their original request that §§ 39-71-604(3) and 50-16-527(5), MCA, be declared unconstitutional under Article II, Section 10 of the Montana Constitution, the Workers also sought a declaration stating that §§ 39-71-604(3) and 50-16-527(5), MCA, are unconstitutional under the Due Process Clauses of Article II, Section 17 of the Montana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. In other words, the Workers sought a declaratory judgment stating that §§ 39-71-604(3) and 50-16-527(5), MCA, are

6

unconstitutional because they violated the Workers' state constitutional right to privacy *and* deprived the Workers of property without due process of law under the Montana and United States Constitutions. The WCC granted the Workers leave to amend their Petition on February 11, 2005.

¶10 On May 6, 2005, the Workers filed a second motion for summary judgment, again asserting that no genuine issues of material fact existed. The Workers renewed their request for summary judgment on the right to privacy issue and also moved for summary judgment on the ground that §§ 39-71-604(3) and 50-16-527(5), MCA, violated their "rights to due process of law under Article II, § 17 of the Montana Constitution and under the 5th and 14th Amendments to the United States Constitution."

¶11 On October 18, 2005, the WCC granted summary judgment in favor of the Workers. The WCC declared that §§ 39-71-604(3) and 50-16-527(5), MCA, violated Article II, Sections 10 and 17 of the Montana Constitution. Further, the WCC noted that it need not address the constitutional challenges raised by the Workers pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. Lastly, the WCC stated that the Workers' request for attorney's fees and costs was "well taken" and ordered the Workers to submit an itemization of attorney's fees and an application for taxation of costs. On October 19, 2005, the WCC issued an order amending its Order Granting Motions for Summary Judgment to correct a typographical error.

¶12 On November 4, 2005, Liberty filed a lengthy Motion to Reconsider. Three days later, MSF filed a Request for Clarification, inquiring as to the constitutionality of §§ 39-71-604(2) and 50-16-527(4), MCA, which also set forth claimant disclosure

7

procedures. In a response dated November 16, 2005, the State noted that it did not oppose Liberty's Motion to Reconsider. Additionally, the State objected to the WCC's award of attorney's fees and costs and also questioned the WCC's jurisdiction to make such an award.

¶13   On April 28, 2006, the WCC denied Liberty's Motion to Reconsider and rejected the State's challenge to the WCC's jurisdiction to award attorney's fees and costs. In the course of its analysis, the WCC also addressed its jurisdiction to issue a declaratory judgment in this case. The WCC did not respond to MSF's Request for Clarification. Appellants appeal from the October 18, 2005 Order Granting Motions for Summary Judgment, the October 19, 2005 Order Amending Order Granting Motions for Summary Judgment, and the April 28, 2006 Order Denying Intervenors' Motion for Reconsideration.

**STANDARD OF REVIEW**

¶14   Interpretation and construction of a statute is a matter of law. *Madrid v. Zenchiku Land and Livestock*, 2002 MT 172, ¶ 5, 310 Mont. 491, ¶ 5, 51 P.3d 1137, ¶ 5. Likewise, a court's determination as to its jurisdiction is a conclusion of law. *Stanley v. Lemire*, 2006 MT 304, ¶ 52, 334 Mont. 489, ¶ 52, 148 P.3d 643, ¶ 52. We review a workers' compensation court's conclusions of law to determine whether the court's conclusions are correct. *Gamble v. Sears*, 2007 MT 131, ¶ 20, ___ Mont. ___, ¶ 20, ___ P.3d ___, ¶ 20 (citing *Flynn v. Uninsured Employers' Fund*, 2005 MT 269, ¶ 11, 329 Mont. 122, ¶ 11, 122 P.3d 1216, ¶ 11); *In re Workers' Comp. Benefits of Noonkester*, 2006 MT 169, ¶ 13, 332 Mont. 528, ¶ 13, 140 P.3d 466, ¶ 13 (citing *Ruhd v. Liberty Northwest Ins.*

8

*Corp.*, 2004 MT 236, ¶ 13, 322 Mont. 478, ¶ 13, 97 P.3d 561, ¶ 13); *Rausch v. State Compensation Ins. Fund*, 2005 MT 140, ¶ 9, 327 Mont. 272, ¶ 9, 114 P.3d 192, ¶ 9.

## DISCUSSION

¶15    *1. Did the WCC err by concluding that it had jurisdiction to enter a declaratory judgment in the particular context of this case?*

¶16    The State contends that the WCC erred by concluding that it had jurisdiction to enter a declaratory judgment concerning the constitutionality of §§ 39-71-604(3) and 50-16-527(5), MCA, in the context of this case.  This question first arose after the WCC had entered its order granting summary judgment in favor of the Workers.  In its order denying Liberty's Motion to Reconsider, the WCC determined that it had jurisdiction to enter a declaratory judgment in this case for the following reasons.

¶17    The WCC noted that the Uniform Declaratory Judgments Act ("UDJA"), codified at §§ 27-8-101 to -313, MCA, provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  Section 27-8-201, MCA.  The WCC then determined that the failure of the Legislature to include the WCC in the list of the courts of record enumerated in § 3-1-102, MCA, does not mean that the WCC is not a court of record.  According to the WCC, reasoning by analogy, the failure of the Legislature to include it in the list of the courts of justice of this state, set forth in § 3-1-101, MCA, would also mean that the WCC is not a court of justice.  It maintained that this reasoning produced "an undoubtedly absurd result."

9

¶18 The WCC further reasoned that Appellants had asked it to insert language into § 3-1-102, MCA, so that it would effectively state that "the municipal courts *and no others* are courts of record."[2] The WCC noted that "[a]lthough § 3-1-102, MCA, enumerates several courts as courts of record, it contains no limiting language to indicate that only those courts mentioned qualify as courts of record in this State." The WCC maintained, therefore, that it was not free to construe § 3-1-102, MCA, in such a manner so as to exclude the WCC from the list of the courts of record.

¶19 Lastly, the WCC observed that it had the same contempt powers as the district courts and that appeals from the WCC proceed directly to the Montana Supreme Court. On these grounds, the WCC concluded that it must be a court of record as contemplated by the UDJA.

¶20 As an alternative theory, the WCC reasoned that if it did not have jurisdiction to issue declaratory judgments concerning the constitutionality of workers' compensation statutes, "it begs the question not only as to which court would have jurisdiction to do so, but what would be the practical effect for a petitioner whose prayer for declaratory judgment is an argument in the alternative to other workers' compensation issues which belong in this Court." The WCC speculated that, more importantly, it was in the best position to make determinations as to the constitutionality of workers' compensation

---

[2] The WCC appears to have been quoting the pre-2005 version of § 3-1-102, MCA. In 2005, the Legislature added "justices' courts of record" to the list of courts of record. Thus, § 3-1-102, MCA, now provides: "The court of impeachment, the supreme court, the district courts, the municipal courts, and the justices' courts of record are courts of record."

10

statutes. Therefore, for all of these reasons, the WCC concluded that it had jurisdiction to issue a declaratory judgment in this case.

¶21 The State argues on appeal that the WCC's conclusion is erroneous.[3] First, the State contends that the WCC is a court of limited jurisdiction and that it may only hear a petition brought by a claimant or an insurer concerning workers' compensation benefits. In the State's view, the WCC's jurisdiction may extend to other benefit-related issues, but only so long as the underlying dispute is related to benefits payable to a claimant. The State cites *Alaska Pac. Assur. Co. v. L.H.C., Inc.*, 191 Mont. 120, 124, 622 P.2d 224, 226 (1981), for the proposition that the WCC does not have jurisdiction when a petition filed by a claimant does not in any way indicate that the claimant was then being deprived of compensation benefits. The State asserts that the Workers' Petition demanded neither benefits nor a declaratory judgment concerning their entitlement to benefits. Therefore, the State argues that the Workers' Petition was not properly before the WCC and, accordingly, that the WCC lacked jurisdiction.

¶22 Second, the State asserts that the only source of authority within the Montana Administrative Procedure Act ("MAPA"; §§ 2-4-101 to -711, MCA) by which the WCC could issue declaratory judgments is § 2-4-501, MCA, which provides that "[e]ach agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the *applicability* of any statutory provision or of any rule or

---

[3] We note that Liberty also challenges the WCC's conclusion concerning its jurisdiction to issue a declaratory judgment in this case. However, Liberty's arguments are encompassed by the State's arguments on this issue, and the State makes a number of arguments not made by Liberty. We therefore set forth the arguments as they are framed by the State.

11

order of the agency" (emphasis added). In addition, the State notes that the WCC can issue declaratory rulings pursuant to Admin. R. M. 24.5.351(1) "[w]here the court has jurisdiction" to do so. Therefore, according to the State, the WCC's authority to issue declaratory judgments or rulings is limited to the *applicability* of statutes and rules concerning disputes over workers' compensation benefits.

¶23 Lastly, the State argues that the UDJA does not confer jurisdiction on the WCC to issue declaratory judgments. The State maintains that courts of record are limited by statute to those listed in § 3-1-102, MCA. Section 3-1-102, MCA, provides that "[t]he courts of impeachment, the supreme court, the district courts, the municipal courts, and the justices' courts of record are courts of record." The State argues that because the WCC is not included in this list, the WCC is not a court of record. Therefore, the State maintains that the UDJA does not confer jurisdiction upon the WCC to issue declaratory judgments outside the realm of a dispute concerning workers' compensation benefits.

¶24 We agree with the State that the WCC did not have jurisdiction to issue a declaratory judgment holding §§ 39-71-604(3) and 50-16-527(5), MCA, unconstitutional in the particular context of this case. Unlike the general jurisdiction granted to district courts over "all cases in law and in equity," § 3-5-302(1), MCA, the WCC is a court of limited jurisdiction, *Oberson v. Federated Mut. Ins. Co.*, 2005 MT 329, ¶ 11, 330 Mont. 1, ¶ 11, 126 P.3d 459, ¶ 11. In particular, the WCC is an administrative tribunal governed by MAPA and allocated to the Department of Labor and Industry for administrative purposes. *See Kloepfer v. Lumbermens Mut. Cas. Co.*, 272 Mont. 78, 81, 899 P.2d 1081, 1083 (1995) ("The statutes governing workers' compensation claims

12

direct the Workers' Compensation Court to be bound by 'the Montana Administrative Procedure Act.' " (quoting § 39-71-2903, MCA)); *Wheeler v. Carlson Transport*, 217 Mont. 254, 263, 704 P.2d 49, 55 (1985) (stating that the WCC is an administrative tribunal); *Hert v. J. J. Newberry Co.*, 179 Mont. 160, 161, 587 P.2d 11, 12 (1978) ("[H]earings before the Workers' Compensation Court are considered to be administrative proceedings."); § 2-15-1707(1), MCA ("The office [of workers' compensation judge] is allocated to the department of labor and industry for administrative purposes only as prescribed in 2-15-121."). Courts of limited jurisdiction have only such power as is expressly conferred by statute. *See Jenkins v. Carroll*, 42 Mont. 302, 312, 112 P. 1064, 1069 (1910).[4]

¶25 The pertinent statutes here are §§ 2-4-501 and 39-71-2905(1), MCA. The latter provides that the WCC has jurisdiction over "dispute[s] concerning any benefits under [the Workers' Compensation Act, Title 39, Chapter 71, MCA]." Section 39-71-2905(1), MCA; *see also Noonkester*, ¶¶ 20, 23; *Liberty v. State Fund*, 1998 MT 169, ¶ 11, 289 Mont. 475, ¶ 11, 962 P.2d 1167, ¶ 11. Section 2-4-501, MCA, in turn, authorizes declaratory rulings "as to the applicability of any statutory provision or of any rule or order of the agency." Taken together, these statutes authorize the WCC to issue declaratory rulings only in the context of a dispute concerning benefits under the

---

[4] The WCC apparently proceeded on the premise that it had jurisdiction to issue a declaratory ruling in this case unless that jurisdiction was *withdrawn* by a provision of law. This premise was incorrect. Because courts of limited jurisdiction have only such power as is expressly conferred by statute, the correct starting premise is that the WCC— or any other court of limited jurisdiction, for that matter—does *not* have the jurisdiction in question unless that jurisdiction is *conferred* by a specific provision of law.

Workers' Compensation Act and only as to the applicability of any statutory provision, rule, or order of the agency to that dispute.

¶26 Here, the Workers' Petition did not demand benefits or a declaratory judgment concerning the applicability of workers' compensation statutes to a particular dispute over benefits. Indeed, the Workers concede in their brief that "[h]ere, no benefits are at issue." Therefore, we hold that the WCC did not have jurisdiction to issue a declaratory judgment holding §§ 39-71-604(3) and 50-16-527(5), MCA, unconstitutional in the context of this case.

¶27 The Workers seek to avoid this holding based on the following four theories. First, the Workers argue that the WCC had jurisdiction to issue a declaratory judgment concerning the constitutionality of §§ 39-71-604(3) and 50-16-527(5), MCA, because Appellants admitted in their responses to the Petition that the issues raised therein were "appropriate for a declaratory judgment by [the WCC]." The Workers cite *Audit Services v. Frontier-West, Inc.*, 252 Mont. 142, 148-49, 827 P.2d 1242, 1247 (1992), in which this Court stated that "[i]t is well settled that the parties are bound by and estopped from controverting admissions in their pleadings." Relying on *Audit Services*, the Workers contend that Appellants are estopped from challenging the jurisdiction of the WCC to issue a declaratory judgment concerning the constitutionality of §§ 39-71-604(3) and 50-16-527(5), MCA.

¶28 We reject this argument outright. "Jurisdiction involves the fundamental power and authority of a court to determine and hear an issue." *Stanley*, ¶ 30 (citing *State v. Diesen*, 1998 MT 163, ¶ 5, 290 Mont. 55, ¶ 5, 964 P.2d 712, ¶ 5). Accordingly, subject-

14

matter jurisdiction can never be forfeited or waived. *Stanley*, ¶ 32 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, ___, 126 S. Ct. 1235, 1244). Additionally, subject-matter jurisdiction cannot be conferred by the consent of a party.[5] *In re Marriage of Miller*, 259 Mont. 424, 427, 856 P.2d 1378, 1380 (1993). Therefore, " '[t]he issue of subject matter jurisdiction may be raised by a party, or by the court itself, at any stage of a judicial proceeding.' " *Noonkester*, ¶ 29 (citing *State v. Tweedy*, 277 Mont. 313, 315, 922 P.2d 1134, 1135 (1996)). Consequently, Appellants' admissions in their responses to the Workers' Petition cannot confer jurisdiction that otherwise does not exist.

¶29　Second, the Workers contend that the WCC's jurisdiction is not confined to disputes concerning benefits. As support for this proposition, the Workers cite *Wunderlich v. Lumbermens Mut. Cas. Co.*, 270 Mont. 404, 409, 892 P.2d 563, 567 (1995), *Miller v. Frasure*, 264 Mont. 354, 361-62, 871 P.2d 1302, 1307 (1994), and *State, Etc. v. Hunt*, 191 Mont. 514, 518, 625 P.2d 539, 542 (1981). The Workers also rely on *Gould v. County Market Super Valu Stores*, 233 Mont. 494, 497, 766 P.2d 213, 215 (1988), in which this Court stated that the WCC's jurisdiction is "limited to workers' compensation matters, and its procedures are less formal," but that its decisions are "something more than administrative agency decisions." Along these same lines, the Workers assert that the authority of the WCC is broader than that exercised by an agency because decisions of the WCC are appealed directly to the Montana Supreme Court. Finally, the Workers claim that under § 39-71-203, MCA, the WCC is vested with the "power, authority, and jurisdiction necessary to the exercise of its power to conduct

---

[5] Counsel for the Workers conceded this point during oral argument.

15

proceedings and hearings and make determinations concerning disputes" under Title 39, Chapter 71, MCA. Therefore, according to the Workers, the jurisdiction of the WCC extends beyond disputes concerning benefits and is not restricted by the fact that its proceedings are conducted under MAPA.

¶30 It is true that the history of the WCC and the statute providing for exclusive jurisdiction in that court "to make determinations concerning disputes under [the Workers Compensation Act]," § 39-71-2905(1), MCA, indicate that "the jurisdiction of the court goes beyond that minimum whenever the dispute is related to benefits payable to a claimant," *Hunt*, 191 Mont. at 519, 625 P.2d at 542. This does not mean, however, that the WCC may issue declaratory rulings outside the context of a dispute concerning benefits, and none of the cases cited by the Workers support their contention that the WCC's jurisdiction is not confined to disputes concerning benefits. *See Wunderlich*, 270 Mont. at 409, 892 P.2d at 567 (analyzing the WCC's ruling made in the context of a dispute over benefits); *Miller*, 264 Mont. at 361-62, 871 P.2d 1302 at 1307 (same), *Gould*, 233 Mont. at 500-01, 766 P.2d at 217 (same), and *Hunt*, 191 Mont. at 518, 625 P.2d at 542 (same).

¶31 Third, the Workers argue that nothing in the UDJA expressly limits the power to enter declaratory judgments under § 27-8-201, MCA, to only those courts of record enumerated in § 3-1-102, MCA. (Again, § 27-8-201, MCA, provides that "*[c]ourts of record* within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed" (emphasis added).) MAPA provides that the WCC shall maintain a "stenographic record of oral

16

proceedings when demanded by a party," § 2-4-614, MCA; accordingly, the Workers suggest that the WCC is "technically" a court of record as contemplated by the UDJA. Therefore, according to the Workers, the WCC had jurisdiction in this case to issue a declaratory judgment stating that §§ 39-71-604(3) and 50-16-527(5), MCA, are unconstitutional.

¶32  The State characterizes the Workers' attempt to categorize the WCC as a court of record as "bizarre." Irrespective of this characterization, we agree with the State that the Workers' position is without merit. For one thing, § 3-1-102, MCA, sets forth the courts of record in this state. They are as follows: "[t]he court of impeachment, the supreme court, the district courts, the municipal courts, and the justices' courts of record are courts of record." Section 3-1-102, MCA. The WCC does not appear in this list, and neither we nor the WCC may read the WCC into the list at the request of the Workers. *See* § 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted.").[6]

---

[6] In this regard, we note that the WCC reasoned that Appellants were asking it to insert language into § 3-1-102, MCA, so that the statute would effectively read: "The court of impeachment, the supreme court, the district courts, the municipal courts, and the justices' courts of record, and no others, are courts of record" (underscore for new language). Yet it was the WCC that inserted language into § 3-1-102, MCA, by effectively adding "the workers' compensation court" to the list contained therein. When the Legislature has provided an exclusive listing in a statute, there is no need to insert limiting but extraneous language (i.e., "and no others").

  Furthermore, the Legislature clearly is capable of expanding the list of the courts of record as it did in 2005 when it added the justices' courts of record (*see* ¶ 18 n. 2). Indeed, during the 2007 Session, the Legislature passed, and the Governor signed, Senate Bill No. 523, which amends § 3-1-102, MCA, to read: "The court of impeachment, the

¶33 Further, the fact that MAPA requires stenographic records in some instances is not sufficient to transform the WCC into a court of record for purposes of § 27-8-201, MCA. The WCC and other administrative tribunals may produce records which this Court or a district court may review on appeal. However, courts that *produce* records are not the same as courts *of* record. The State correctly points out that if every administrative tribunal could transform itself into a court of record simply by producing records, the statutory limitations on the jurisdiction of courts of limited jurisdiction would be meaningless. Thus, lest there be any doubt, the WCC is not presently authorized to issue declaratory judgments under the UDJA and, more specifically, § 27-8-201, MCA.

¶34 Fourth, and lastly, the Workers maintain that if, as the State suggests, the Workers must challenge the constitutionality of workers' compensation laws in district court, the "practical effect of this solution" is to force them into "two separate courts; foster confusion between two courts; increase the likelihood of conflicting rulings; and compound time and expense for all litigants." This argument also is without merit. If the Workers have "a dispute concerning any benefits" under the Workers' Compensation Act, and if they wish, within the context of that dispute, to challenge "the applicability of any statutory provision or of any rule or order of the agency" on constitutional grounds, they may do so. Sections 2-4-501, 39-71-2905(1), MCA. Therefore, as a factual matter,

---

supreme court, the district courts, the workers' compensation court, the municipal courts, and the justices' courts of record are courts of record" (underscore for new language). The fact that the WCC was not heretofore included in the list of courts of record contained in § 3-1-102, MCA, but will be included in that list beginning October 1, 2007 (the effective date of the amendment), only bolsters our conclusion that during the time period at issue here, the WCC was *not* a court of record.

the Workers' fear of being forced into two separate courts is simply unfounded. On the other hand, if the Workers wish to challenge the constitutionality of a statutory provision, rule, or order *outside* the context of a dispute concerning benefits, they must do so in district court. While the Workers contend that the "practical effect" of this scheme is to foster confusion between two courts, increase the likelihood of conflicting rulings, and compound time and expense for all litigants—a contention which is not supported by any evidence in the record—the statutory scheme is what the Legislature created, and conjectured savings in judicial economy cannot be a source of subject-matter jurisdiction.

¶35    For the foregoing reasons, we conclude that the WCC erred by concluding that it had jurisdiction to issue a declaratory judgment holding §§ 39-71-604(3) and 50-16-527(5), MCA, unconstitutional in the context of this case.

¶36    *2. Did the WCC err when it awarded attorney's fees and costs against the State?*

¶37    The State argues that the Workers were not entitled to the attorney's fees and costs awarded by the WCC for either of two reasons: (1) because the decision of the WCC to enter a declaratory judgment holding §§ 39-71-604(3) and 50-16-527(5), MCA, unconstitutional must be reversed, or (2) because the WCC's authority to award attorney's fees and costs did not apply in this case.

¶38    The general rule in Montana is that absent a statutory or contractual provision, attorney's fees are not recoverable. *Stanley*, ¶ 72; *accord Hoven v. Amrine*, 224 Mont. 15, 17, 727 P.2d 533, 534 (1986) ("Attorney fees are allowed when they are provided for by statute or contractual provision."). The WCC has authority to award attorney's fees and costs in cases when it "determines that the insurer's actions in denying liability or

19

terminating benefits were unreasonable." Section 39-71-611(1)(c), MCA. As the State points out, this is not such a case—not only because the State (as distinguished from MSF) is not an insurer, but also because this was not an action concerning benefits.

¶39 Apparently recognizing that § 39-71-611(1), MCA, did not authorize an award of attorney's fees and costs in this case, the WCC relied on § 27-8-311, MCA, which provides that "[i]n any proceeding under this chapter the court may make such award of costs as may seem equitable and just." For the reasons set forth above, however, the WCC did not have jurisdiction to enter a declaratory ruling under the UDJA; thus, this case was not a proceeding under Title 27, Chapter 8, MCA. Accordingly, § 27-8-311, MCA, also was not authority for the WCC to award attorney's fees and costs in this case.

¶40 We conclude that the WCC erred when it awarded attorney's fees and costs against the State, and we therefore reverse the WCC's award of attorney's fees and costs.

## CONCLUSION

¶41 In summary, we hold that the WCC erred in concluding that it had jurisdiction to issue a declaratory judgment holding §§ 39-71-604(3) and 50-16-527(5), MCA, unconstitutional in the context of this case. If the Workers wish to challenge the constitutionality of §§ 39-71-604(3) and 50-16-527(5), MCA, that challenge must be brought in district court. Likewise, we also reverse the WCC's award of attorney's fees and costs against the State.

¶42 Reversed.

/S/ JAMES C. NELSON

20

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE

/S/ MIKE SALVAGNI
District Court Judge sitting
for Justice Brian Morris


Justice W. William Leaphart dissenting.

¶43    I dissent.

¶44    The WCC has, on numerous occasions, adjudicated constitutional challenges to statutes under the Workers' Compensation Act (the Act). *See e.g. Stavenjord v. Montana State Fund*, 2003 MT 67, 314 Mont. 466, 67 P.3d 229; *Rausch v. State Compensation Ins. Fund*, 2005 MT 140, 327 Mont. 272, 114 P.3d 192; *Reesor v. Montana State Fund*, 2004 MT 370, 325 Mont. 1, 103 P.3d 1019; *Bustell v. AIG Claims Services, Inc.*, 2004 MT 362, 324 Mont. 478, 105 P.3d 286; *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, 315 Mont. 51, 67 P.3d 290.  In the majority opinion, this Court cites to §§ 2-4-501 and 39-71-2905(1), MCA, as controlling in this case, holding that if injured employees "wish to challenge the constitutionality of a statutory provision, rule, or order *outside* the context of a dispute concerning benefits, they must do so in district court."  ¶¶ 25, 34.

¶45    First of all, the entirety of the Court's opinion is based upon a false premise—that is, the constitutional issue posed does not involve "benefits."   At issue is the

21

constitutionality of § 39-71-604(3), MCA, which provides that the filing of a claim for "benefits" authorizes an insurer to communicate with a physician or health care provider about "relevant" health care information and to receive such information "without prior notice to the injured employee." Obviously the issue does involve "benefits." The issue of whether insurers obtain medical information directly from doctors without knowledge of a claimant can only arise if a claimant has filed a claim for benefits. While there is no claim for benefits in this specific declaratory action, the action arose when Workers, in pursuit of their individual claims for benefits, realized their right to privacy was being compromised. Leaving their individual benefit claims separate, they filed suit together to protect their own right to privacy, and to pave the way so that others can file for benefits without having to sacrifice their constitutional right to privacy. The WCC has jurisdiction to address issues which arise *after* benefits have been determined, i.e. fees and costs. *See Kelleher Law Office v. State Comp. Ins. Fund*, 213 Mont. 412, 417, 691 P.2d 823, 825 (1984). Why then would the same court not have jurisdiction to address the statutory hurdles to obtaining benefits in the first instance? Benefits are indirectly, if not directly, involved in both instances.

¶46 Even if one assumes the Court's ostrich approach and pretends that the statutes at issue do not involve benefits, the Court is wrong in concluding that § 39-71-2905(1), MCA, limits the WCC to cases which directly involve claims for benefits. While the Court's holding does not call into question the validity of the above cases, it incorrectly interprets § 39-71-2905(1), MCA, which gives the WCC exclusive jurisdiction of any dispute arising under the Act with only two exceptions.

22

¶47 Section 39-71-2905(1), MCA, provides in whole:

A claimant or an insurer who has a *dispute concerning any benefits* under chapter 71 of this title may petition the workers' compensation judge for a determination of the dispute after satisfying dispute resolution requirements otherwise provided in this chapter. In addition, the district court that has jurisdiction over a pending action under 39-71-515 may request the workers' compensation judge to determine the amount of recoverable damages due to the employee. The judge, after a hearing, shall make a determination of the dispute in accordance with the law as set forth in chapter 71 of this title. *If the dispute relates to benefits due* to a claimant under chapter 71, the judge shall fix and determine any benefits to be paid and specify the manner of payment. *After parties have satisfied dispute resolution requirements provided elsewhere in this chapter, the workers' compensation judge has exclusive jurisdiction to make determinations concerning disputes under chapter 71, except as provided in 39-71-317 and 39-71-516.* The penalties and assessments allowed against an insurer under chapter 71 are the exclusive penalties and assessments that can be assessed by the workers' compensation judge against an insurer for disputes arising under chapter 71.

(Emphasis added.) Pursuant to this statute, the WCC has jurisdiction of disputes concerning any benefits after dispute resolution requirements are met. The statute then provides that *if* the dispute relates to benefits due, the workers' compensation judge must fix the amount. The fact that the legislature included the words "if the dispute relates to benefits due" indicates that the legislature contemplated non-benefit related disputes to be handled by the WCC if they arose under the Act. In fact, the legislature went on to provide that the workers' compensation judge has *exclusive* jurisdiction to make determinations concerning disputes ("disputes" having no qualifying language about benefits this time) under the Act, with only two exceptions, neither of which are applicable here. The statute does not exclude constitutional challenges from the jurisdiction of the WCC if the challenges concern the Act.

23

¶48    This Court has previously held:

> [T]he contention that the Workers' Compensation Court has no declaratory power is not in accord with the provisions of the statute nor the provisions of the Montana Administrative Procedures Act.
>
> Although the Workers' Compensation Court is not vested with the full powers of a District Court, it nevertheless has been given broad powers concerning benefits due and payable to claimants under the Act. It has the power to determine which of several parties is liable to pay the Workers' Compensation benefits, or if subrogation is allowable, what apportionment of liability may be made between insurers, and other matters that go beyond the minimum determination of the benefits payable to an employee.

*State ex rel. Uninsured Emp. Fund v. Hunt*, 191 Mont. 514, 519, 625 P.2d 539, 542 (1981).  As an extension of this logic, this Court has held that the "extended jurisdictional authority of the [WCC] includes payment of attorney's fees and related costs." *Kelleher Law Office*, 213 Mont. at 415, 691 P.2d at 825.  In the case at hand, the Workers brought a constitutional challenge to a statute under the Act that conditions a claim for benefits on the waiver of the claimant's right of privacy in his or her medical records.  Recognizing that the WCC has jurisdiction to handle such cases makes sense when one considers that our "district courts have not been concerned with workers' compensation benefits since the establishment of the Workers' Compensation Court in 1975." *Ingraham v. Champion Intern.*, 243 Mont. 42, 49, 793 P.2d 769, 773 (1990).  I have no doubt that if the Workers had brought their claim in district court, it would have been dismissed for lack of jurisdiction.

¶49    Based on my conclusions, (1) that this declaratory claim does involve benefits, and (2) that the WCC has jurisdiction to hear disputes arising under the Act even outside the context of benefits, I further conclude that rendering declaratory judgments with regard to

employee rights is well within the authority of the WCC.  That said, I would also affirm the award of attorneys' fees and costs taxed against the State pursuant to § 27-8-311, MCA.

/S/ W. WILLIAM LEAPHART

Justice John Warner concurring and dissenting.

¶50     I concur with the result of the Court's opinion, but not with much of what is said therein.

¶51     As noted by the Court at ¶ 26, the Workers' petition did not demand a judgment concerning the applicability of workers' compensation statutes to a particular claim for benefits.  The Workers sought a declaratory judgment only.  Section 27-8-201, MCA, provides in pertinent part:

> Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations . . . .

¶52     It is clear that the power to issue a declaratory judgment is reserved to courts of record.  The WCC is not a court of record.  Section 3-1-102, MCA.  Thus, the WCC had no jurisdiction to issue its declaratory judgment and the Court is correct that such judgment must be reversed and this action dismissed.

¶53     However, I do agree with Justice Leaphart that the present action involves "benefits."  Had the WCC issued its opinion in a controversy involving a particular claimant, and not in a declaratory judgment action, it would have had jurisdiction to

determine whether the disclosure provisions in §§ 39-71-604(3) and 50-16-527(5), MCA, violated their constitutional rights and to consider and award attorney fees.

¶54   Thus, I concur with the result of this case, but disagree with much of the Court's rational.

/S/ JOHN WARNER